- *1* -

Merced Dominguez, Lucien Jeffords, Deborah
MaxiLove, Richard Doran, Ronald Banyash,
Pamala Benfante, Melissa Zajac, Rebecca

| | |
|---|---|
| Your Name: | Fisher, Melissa Cheatwood, Clarence Galtney, |
| Address: | 1349 Hearst Avenue Berkeley, California 94702 |
| Phone Number: | (510) 435-0152 |
| Fax Number: | |
| E-mail Address: | Mcbear5678@gmail.com |
| Pro Se Plaintiff | |

*FILED*

NOV -4 2021

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

IFP

NP

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

Merced Dominguez,
Lucien Jeffords, Deborah
MaxiLove, Richard Doran,
Ronald Banyash
Pamala Benfante, Melissa Zajac, Rebecca
Fisher,Melissa Cheatwood,Clarence Galtney

and all others similarly situated,

Plaintiff,

vs.

City of Berkeley (CoB)

CoB Manager's Office, CoB Homeless

Response Team, CoB Parking Enforcement

and CoB Police Department,

Defendant.

C 21-08599

Case Number    *[leave blank]*

**COMPLAINT**

Temporary Restraining Order and Order to
Show Cause Re: Preliminary Injuction

DEMAND FOR JURY TRIAL

Yes ✓   No ☐

**PARTIES**

1. Plaintiff. *[Write your name, address, and phone number. Add a page for additional plaintiffs.]*    (See Attached. Additional Plaintiffs)

| | |
|---|---|
| Name: | Merced Dominguez |
| Address: | 1349 Hearst Avenue Berkeley, California 94702 |
| Telephone: | (510) 435-0152 |

COMPLAINT
PAGE 1 OF 31 *[JDC TEMPLATE – Rev. 05/2017]*

- 8 -

*[Copy this page and insert it where you need additional space.]*

2 .   PLAINTIFF #2: Lucien Jeffords

ADDRESS: 1349 Hearst Avenue Berkeley, California 94702

PHONE: (510) 435-0152

EMAIL: Mcbear5678@gmail.com



3 .   PLAINTIFF #3: Deborah MaxiLove

ADDRESS: 1349 Hearst Avenue Berkeley, California 94702

PHONE: (510) 435-0152

EMAIL: Mcbear5678@gmail.com



4 .   PLAINTIFF #4: Richard Doran

ADDRESS: 1349 Hearst Avenue Berkeley, California 94702

PHONE: (510) 435-0152

EMAIL: Mcbear5678@gmail.com



5 .   PLAINTIFF #5: Ronald Banyash

ADDRESS: 1349 Hearst Avenue Berkeley, California 94702

PHONE: (510) 435-0152

EMAIL: Mcbear5678@gmail.com



6 .   PLAINTIFF #6: Pamala Benfante

ADDRESS: 1349 Hearst Avenue Berkeley, California 94702

PHONE: (510) 435-0152

- 8 -

*[Copy this page and insert it where you need additional space.]*

7 .    PLAINTIFF #7: Melissa Cheatwood

ADDRESS: 1349 Hearst Avenue Berkeley, California 94702

PHONE: (510) 435-0152

EMAIL: Mcbear5678@gmail.com

8 .    PLAINTIFF #8: Rebecca Fisher

ADDRESS: 1349 Hearst Avenue Berkeley, California 94702

PHONE: (510) 435-0152

EMAIL: Mcbear5678@gmail.com

9 .    PLAINTIFF #9: Melissa Zajac

ADDRESS: 1349 Hearst Avenue Berkeley, California 94702

PHONE: (510) 435-0152

EMAIL: Mcbear5678@gmail.com

10    PLAINTIFF #10: Clarence Galtney

ADDRESS: 1349 Hearst Avenue Berkeley, California 94702

PHONE: (510) 435-0152

EMAIL: Mcbear5678@gmail.com

_____ . _____

COMPLAINT
PAGE 3 OF 31 *[JDC TEMPLATE – 05/17]*

- 2 -

2.  Defendants. [*Write each defendant's full name, address, and phone number.*]

Defendant 1:

Name:       City of Berkeley

Address:    2180 Milvia Street Berkeley, California 94704

Telephone:  Mayor: (510) 981-7100 & Council: (510) 981-6900

Email:      mayor@cityofberkeley.info / council@cityofberkeley.info

Defendant 2:

Name:       City of Berkeley Manager's Office

Address:    2180 Milvia Street Berkeley, California 94704

Telephone:  (510) 981-7000

Email:      manager@cityofberkeley.info

Defendant 3:

Name:       City of Berkeley Police Department

Address:    2100 Martin Luther King Drive Berkeley, California 94704

Telephone:  (510) 981-5799

Email:      police@cityofberkeley.info        (SEE ATTACHED ADDITIONAL DEFENDANTS)

## JURISDICTION

[*Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.*]

3.  My case belongs in federal court

☑ under federal question jurisdiction because it is involves a federal law or right.

[*Which federal law or right is involved?*] The violation of the Civil Rights of people living in vehicles under U.S. Constitution Amendments: 1st, 4th, 8th, and 14th.                    .

☐ under diversity jurisdiction because none of the plaintiffs live in the same state as any of the defendants and the amount of damages is more than $75,000.

COMPLAINT
PAGE 4 OF 31 [*JDC TEMPLATE – Rev. 05/2017*]

- 8 -

*[Copy this page and insert it where you need additional space.]*

1    DEFENDANT #4: City of Berkeley Parking Enforcement
___.

ADDRESS: 2100 Martin Luther King Drive Berkeley, California 94704

PHONE: (510) 981-5900

EMAIL: police@cityofberkeley.info

2    DEFENDANT #5: City of Berkeley Homeless Response Team
___.

ADDRESS: 2180 Milvia Street Berkeley, California 94704

PHONE: (510) 981-7100

EMAIL: manager@cityofberkeley.info

___.

___.

___.

COMPLAINT
PAGE **5** OF **31** *[JDC TEMPLATE – 05/17]*

1

## VENUE

2

3

4

[*The counties in this District are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma.  If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit.  Check the box for each venue option that applies.*]

5

4.    Venue is appropriate in this Court because:

6

☑ a substantial part of the events I am suing about happened in this district.

7

☑ a substantial part of the property I am suing about is located in this district.

8

☐ I am suing the U.S. government, federal agency, or federal official in his or her

9

official capacity <u>and</u> I live in this district.

10

☐ at least one defendant is located in this District and any other defendants are

11

located in California.

12

13

## INTRADISTRICT ASSIGNMENT

14

15

16

17

[*This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka.  First write in the county in which the events you are suing about happened, and then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties.  The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties.  The Eureka division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge.*]

18

5.    Because this lawsuit arose in <u>Alameda</u> County, it should be

19

assigned to the <u>San Francisco/Oakland</u> Division of this Court.

20

21

## STATEMENT OF FACTS <sub></sub> (Also see attached MOTION packet)

22

23

[*Write a short and simple description of the facts of your case.  Include basic details such as <u>where</u> the events happened, <u>when</u> things happened and <u>who</u> was involved. Put each fact into a separate, numbered paragraph, starting with paragraph number 6. Use more pages as needed.*]

24

1.    Despite the COVID-19 pandemic and a severe housing crisis, the City of Berkeley is

25

enacting new ordinances, which seek to punish and criminilize the City's vehicularly housed

26

residents. These ordinaces are the Oversize Vehicle Overnight Ban, Gross Vehicle Weight Limits

27

and four-hour limit pilot parking program.

28

- 4 -

2     The City of Berkeley is utilizing Cruel and Unusual Punishments against its

vehicularly housed population in order to enforce its new vehicle ordinances.

Each of these Plaintiffs has longstanding roots in Berkeley, but now faces financial

destabilization, loss of all possessions and home, loss of employment, and potential

displacement from school.

3     The City is seeking to prohibit vehicle residents from residing within its borders

despite the fact that hundreds of residents have sought necessary shelter in RVs, OSVs, vans and

cars. In some cases, a vehicle is the only means to reside in Berkeley to maintain

employment, education, and healthcare. Nevertheless, the City has banned RVs and restricted

other vehicle homes.

4     Despite the growing housing crisis, the City has increased its efforts to remove

residents seeking alternative housing, specifically vehicle dwellings. A person who violates these

ordinances is deemed guilty of an infraction, which is punishable for a first conviction by a fine not

more than $100, for a second conviction by a fine of not more than $200, and a third or any

subsequent conviction by a fine of not more than $500.

5     The City of Berkeley's ordinances, specifically directed towards vehicle residents, are

Vague and Unconstitutional. The City passed Ordinance  4462-NS § 2, 1970 ("Human Habitation

Prohibited Ordinance"), which made it unlawful for any person to "use or occupancy of any house

car or camper for human habitation within the City for three consecutive nights in any

90-day period."

6     The City has begun enforcing its OSV Overnight Ordinance without adequate

notification to its vehicle dwelling residents and without adequate signage. Parking tickets are

often financially devastating for people living in their vehicles, and can result in them loosing

their only home through towing and impoundment.

//

//

COMPLAINT
PAGE 7 OF 31 [JDC TEMPLATE – Rev. 05/2017]

*[Copy this page and insert it where you need additional space.]*

7. The City of Berkeley's blatant attempt to banish those who rely on RVs, OSVs, trailers vans, and cars for housing and mobility violates the U.S. Constitution and the California Constitution, and disproportionately affects those with physical and mental disabilities. The City of Berkeley even issued 72-hour notices on vehicle homes during the height of the record breaking rainstorm in the San Francisco Bay Area in the weekend of October 23, 2021.

8. The City has activated a safe parking program called Safe Parking and Respite Kickstart RV parking program (S.P.A.R.K), which is high barrier, and low limit of 40 households despite the hundreds of people residing in their vehicles in the City of Berkeley. The Lot has no housing navigation services provided and a limited duration of 11-months as of Septemeber 2021. Additionally, it has come to the attention of current and perspective residents of the S.P.A.R.K program that the parking lot has a history of as a known toxic waste site. Vehicle residents received no formal notice or clarification of these issues.

9. The City of Berkeley claimed the need for vehicle ordinances enforcement due to "health and safety" concerns, however, the City has led to the creation of many health and safety issues associated with vehicle dwelling residents by intentionally prohibiting these residents from securing their own sanitation services such as trash and recycling.

10. In major U.S. cities, a survey of homeless adults resulted in 49% of the population having been a victim of a violent crime. In addition, the Center for Disease Control (CDC) found individuals who are homeless have an increased risk of experiencing victimization and violence. Violent crime is a very real consequences of having a vehicle home impounded.

COMPLAINT
PAGE 8 OF 31 *[JDC TEMPLATE – 05/17]*

- 8 -

*[Copy this page and insert it where you need additional space.]*

11.   Plaintiffs bring the following claims for relief against the City: (1) Violation of Plaintiffs' Right to Free Movement (Fourteenth Amendment of the U.S. Constitution); (2) Violation of Plaintiffs' Right to Free Movement/Travel (Article I, §§ 7(a) and 24 of the California Constitution); (3) Violation of Substantive Due Process—Void for Vagueness (OSV Overnight Ban) (Fourteenth Amendment of the U.S. Constitution); (4) Violation of Substantive Due Process—Void for Vagueness (Human Habitation Ban) (Fourteenteen Amendment of the U.S. Constitution); (5) Cruel and Unusual Punishment (Eighth Amendment of the U.S. Constitution); (6) Violation of Substantive Due Process—State Created Danger (Fourteenth Amendment of the U.S. Constitution); (7) Excessive Fines and Fees (Eighth Amendment of the U.S Constitution); 8) Excessive Fines and Fees (Cal. Const. Article I, § 17); (9) Unlawful Seizure of Property by Towing (Fourth Amendment of the U.S. Constitution); (10) Unlawful Seizure of Property by Towing (Article I, § 13 of the California Constitution).

Additionally, Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, and Banyash also bring claims, on behalf of themselves and a disability subclass: (11) Violation of Title II of the Americans with Disabilities Act; (12) Violation of Section 504 of the Rehabilitation Act of 1973; (13) Violation of the California Disabled Persons Act, and (14) Violation of California Government Code Section 11135.

- 5 -

1

2

## CLAIMS

### First Claim

3   (*Name the law or right violated*: U.S. Constitution Amendments 1st, 4th, 8th and 14th                    )

4   (*Name the defendants who violated it*: City of Berkeley (CoB), CoB Manager's Office, CoB Police )
    CoB Parking Enforcement, & CoB Homeless Response Team
5   [*Explain briefly here what the law is, what each defendant did to violate it, and how you were*

6   *harmed.  You do not need to make legal arguments.  You can refer back to your statement of facts.*]

7       1      FIRST CLAIM FOR RELIEF: Right to Free Movement/Right to Travel (Fourteenth A

8   Amendment of U.S. Constitution). [See Page: 13 ]

9

10

11      2      SECOND CLAIM FOR RELIEF: Right to Free Movement/Right to Travel

12  (Equal Protection Clause (Article I, §§ 7(a) and 24) of the California Constitution) [ See Page: 14 ]

13

14

15      3      THIRD CLAIM FOR RELIEF: Substantive Due Process—Void for Vagueness

16  (OSV Overnight Ban) (Fourteenth Amendment of the U.S. Constitution) [See Page: 15 ]

17

18

19      4      FOURTH CLAIM FOR RELIEF: Substantive Due Process—Void for Vagueness

20  (Human Habitation Ban) (Fourteenth Amendment of the U.S. Constitution) [See Page: 16 ]

21

22

23      5      FIFTH CLAIM FOR RELIEF: Cruel and Unusual Punishment

24  (Eighth Amendment of the U.S. Constitution) [See Page: 17 ]

25

26

27  //

28

- 6 -

1        Index of _____ Claims

2    (*Name the law or right violated*: U.S. Constitution Amendments 1st, 4th, 8th and 14th                    )

3    (*Name the defendants who violated it*: CoB, CoB Manager's Office, CoB Police, CoB Parking                    )

4        6        SIXTH CLAIM FOR RELIEF: Excessive Fines and Fees

5    (Eighth and Fourteenth Amendment of the U.S. Constitution) [See Page: 18 ]

6

7

8        7        SEVENTH CLAIM FOR RELIEF: Excessive Fines and Fees

9    (Article I, § 17 of the California Constitution) [See Page: 19]

10

11

12        8        EIGHTH CLAIM FOR RELIEF: State-Created Danger

13    (Fourteenth Amendment of the U.S. Constitution)  [See Page: 20]

14

15

16        9        NINTH CLAIM FOR RELIEF: Unlawful Seizure of Property by Towing

17    (Fourth Amendment of the U.S. Constitution)  [See Page: 21]

18

19

20        10        TENTH CLAIM FOR RELIEF: Unlawful Seizure of Property by Towing

21    (Article I, § 13 of the California Constitution) [See Page: 22]

22

23

24        11        ELEVENTH CLAIM FOR RELIEF:Plaintiffs Dominguez, Zajac, MaxiLove,

25    Galtney, Banyash and Members of the Subclass Violation of Title II of the Americans

26    with Disabilities Act (42 U.S.C. §§ 12132, et seq.) [See Page: 22]

27

28

COMPLAINT
PAGE 11 OF 31 *[JDC TEMPLATE – 05/17]*

- 8 -

*[Copy this page and insert it where you need additional space.]*

12 .  TWELFTH CLAIM FOR RELIEF: Plaintiffs Dominguez, Zajac, MaxiLove,

Galtney, Banyash and Members of the Subclass Violation of Section 504 of the

Rehabilitation Act of 1973 (29 U.S.C. § 749) [See Page: 25 ]

13 .  THIRTEENTH CLAIM FOR RELIEF: Plaintiffs Dominguez, Zajac, MaxiLove,

Galtney, Banyash and Members of the Subclass Violation of the California Disabled

Persons Act (California Civil Code §§ 54–54.3) [See Page: 25]

14 .  FOURTEENTH CLAIM FOR RELIEF: Plaintiffs Dominguez, Zajac, MaxiLove,

Galtney, Banyash and Members of the Subclass Discriminatory Program (Cal. Gov't

Code §11135) [See Page: 26]

COMPLAINT
PAGE 12 OF 31 *[JDC TEMPLATE – 05/17]*

## LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF: Right to Free Movement/Right to Travel
### (Fourteenth Amendment of the U.S. Constitution)

1. Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

2. Since even before the adoption of the U.S. Constitution, residents of all states have possessed the fundamental right, inherent in citizens of all free governments, [to] peacefully dwell within the limits of their respective states, to move at will from place to place therein, and to have free ingress thereto and egress therefrom…" U.S. v. Wheeler, 254 U.S. 281, 293 (1920). The fundamental right to travel and to "peacefully dwell," although not explicitly enumerated in the Constitution, has been consistently recognized by the courts and has been found to be embedded within the Commerce Clause (Article I, § 8) and the Privileges and Immunities, Due Process, and Equal Protection Clauses of the Fourteenth Amendment. Although sometimes referred to in shorthand fashion as a "right to travel" or "right to freedom of movement," this fundamental right encompasses not only both intrastate and interstate travel, but also the right to remain, free from disturbance, in the place where one has arrived.

3. Because the right of freedom of movement is a fundamental right, under the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, any ordinance restricting exercise of that right is "presumptively invidious" and is invalid unless the government can prove the restriction has been "precisely tailored to serve a compelling governmental interest." Plyler v. Doe, 457 U.S. 202, 216-17 (1982). The OSV Ordinance serves no compelling governmental interest; in fact, the OSV Ordinance was established to expel from the City those who cannot afford permanent residences in Pacifica and who sleep in vehicles as a result. Even if the City had a compelling interest—which it does not—the City failed to take efforts to precisely tailor its OSV Ordinance to serve such an interest, as would be required.

4. The City's OSV Overnight Ordinance and 72-hour time limits violates Plaintiff's fundamental right to free movement for several reasons, including by targeting

Plaintiffs and Class members and seeking to banish them from the City based on their lack of fixed housing and socioeconomic status. The OSV Overnight Ordinance and 72-hour time limits impermissibly prevents Plaintiffs and Class members from peacefully dwelling in the city of their choosing. The OSV Overnight Ordinance and 72-hour time limits also impermissibly favors Berkeley residents in fixed housing and discriminates against Plaintiffs and Class members by denying Plaintiffs and Class members any options for vehicle homes' parking permits. Furthermore, the OSV Overnight Ordinance and 72-hour time limits flatly denies Plaintiffs their right to use City property designed for the purpose for which Plaintiffs seek to use it, namely, prohibiting Plaintiffs and Class members from parking their vehicles on public roads intended for parking. Expelling an entire population from the City is particularly egregious, and dangerous, in light of the ongoing COVID-19 pandemic which threatens the health and safety of this vulnerable population who are at risk of being displaced from the City and critical resources.

**SECOND CLAIM FOR RELIEF: Right to Free Movement/Right to Travel (Equal Protection Clause (Article I, §§ 7(a) and 24) of the California Constitution)**

5. The California Constitution, Article I, §§ 7(a) and 24, protects the right to travel and freedom of movement. "[T]he right to intrastate travel (which includes intramunicipal travel) is a basic human right…implicit in the concept of a democratic society…This personal liberty consists in the power of locomotion, of changing situation or moving one's person to whatever place one's inclination may direct, without imprisonment or restraint." In re White, 97 Cal. App. 3d 141, 148 (1979) (internal citations omitted).

6. Because the right of freedom of movement is a fundamental right, under the Equal Protection Clause of the California Constitution, any ordinance restricting exercise of that right "should be regarded with skepticism. If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used." White, 97 Cal. App. 3d at 150. The  OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban serves no

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

compelling governmental interest; in fact, the OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban were established to expel from the City those who cannot afford permanent residences in Berkeley and who sleep in vehicles as a result. Even if the City had a compelling interest—which it does not—the City failed to take efforts to precisely tailor its OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban to serve such an interest, as would be required.

7.  The City's  OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban violates Plaintiffs' fundamental right to free movement for several reasons, including by targeting Plaintiffs and Class members and seeking to banish them from the City based on their lack of fixed housing and socioeconomic status. The  OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban impermissibly prevents Plaintiffs and Class members from peacefully dwelling in the city of their choosing. The  OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban also impermissibly favors Berkeley residents in fixed housing and discriminates against Plaintiffs and Class members by denying Plaintiffs and Class Members any options for vehicle homes' parking permits. Furthermore, the  OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban flatly denies Plaintiffs their right to use City property designed for the purpose for which Plaintiffs seek to use it, namely, prohibiting Plaintiffs and Class members from parking their vehicles on public roads intended for parking. Expelling an entire population from the City is particularly egregious, and dangerous, in light of the ongoing COVID-19 pandemic which threatens the health and safety of this vulnerable population who are at risk of being displaced from the City and critical resources.

**THIRD CLAIM FOR RELIEF**: **Substantive Due Process—Void for Vagueness (OSV Overnight Ban) (Fourteenth Amendment of the U.S. Constitution)**

8.  Plaintiffs incorporate by reference all foregoing and subsequent allegations as though

1   fully set forth herein.

2   9.  The Substantive Due Process Clause of the Fourteenth Amendment to the U.S.

3       Constitution provides that no state shall "deprive any person of life, liberty, or

4       property, without due process of law." To satisfy the Substantive Due Process Clause,

5       a municipal ordinance must be sufficiently definite to provide adequate notice of

6       conduct proscribed and provide sufficient guidelines for the police so that arbitrary

7       and discriminatory enforcement does not occur. Desertrain v. City of L.A., 754 F.3d

8       1147, 1155 (9th Cir. 2014).

9   10. As written, under the OSV Overnight Ordinance, "any person to park any oversized

10      or heavy-duty commercial vehicle on any street between the hours of two a.m. and

11      five a.m. for a greater length of time than one hour." The OSV Overnight Ordinance

12      defined an "oversize or heavy-duty commercial vehicle shall mean a single vehicle or

13      combination of vehicles having more than two axles, a single vehicle or combination

14      of vehicles 20 feet or more in length, or a single vehicle or combination of vehicles

15      six feet six inches or more in width, and shall include, but shall not be limited to

16      dump trucks, moving vans, tractors, pole or pipe dollies, recreational vehicles (RVs),

17      campers." The language in the OSV Overnight Ordinance, and also other ordinances

18      like the Gross Vehicle Weight Restrictions, and the Human Habitation Ban fails to

19      provide adequate notice of conduct proscribed.

20  11. Furthermore, the City has failed to provide notice or guidelines for the police so as to

21      prevent arbitrary and discriminatory enforcement.

22  12. Additionally, the City has provided inconsistent and confusing lists, maps, signage,

23      and instructions from law enforcement officers such that a reasonable person would

24      not be able to determine what constitutes a violation of the vehicle ordinances.

25  13. The OSV Overnight Ordinance should therefore be declared unconstitutionally vague

26      facially in violation of Substantive Due Process protections under the Fourteenth

27      Amendment to the U.S. Constitution.

**FOURTH CLAIM FOR RELIEF: Substantive Due Process—Void for Vagueness**

**(Human Habitation Ban) (Fourteenth Amendment of the U.S. Constitution)**

1    14. Plaintiffs incorporate by reference all foregoing and subsequent allegations as though

2         fully set forth herein.

3    15. As written, the Human Habitation Ban (Berkeley Municipal Code 12.76.010, Chapter

4         1.2, Title 12, Ord. 5591-NS § 1 (part), 1984: Ord. 4462-NS § 3, 1970) makes it

5         unlawful for Plaintiffs or Class Members to engage in "human habitation" between

6         the hours of 10 p.m. and 6 a.m. in a vehicle for three consecutive nights in any 90 day

7         period. Human habitation is broadly defined, and its definition does not clearly

8         indicate the line between innocent and illegal activity.

9    16. The Human Habitation Ordinance should therefore be declared unconstitutionally

10        vague facially in violation of Substantive Due Process protections under the

11        Fourteenth Amendment to the U.S. Constitution.

12   **FIFTH CLAIM FOR RELIEF: Cruel and Unusual Punishment (Eighth Amendment**

13   **of the U.S. Constitution)**

14   17. Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though

15        fully set forth herein.

16   18. Under the Eighth Amendment, a government cannot impose criminal penalties on

17        indigent persons for sitting, sleeping, or lying outside on public property so long as

18        those persons do not have access to shelter. Martin v. City of Boise, 902 F.3d 1031,

19        1048 (9th Cir. 2018), amended by 920 F.3d 584 (9th Cir. 2019), cert. denied, 140 S.

20        Ct. 674 (2019).

21   19. The OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions,

22        and the Human Habitation Ban imposes criminal penalties on Plaintiffs and Class

23        members for sleeping in the only shelter they have access to, their vehicle homes

24        parked on public roads in Berkeley.

25   20. There are no shelters for the unhoused in the City. Plaintiffs and Class Members' only

26        available shelter from the elements is to sleep or simply "be" is in their vehicles.

27        Plaintiffs and Class Members must stop their vehicles to perform these basic human

28        functions and have no options but to park on City streets, because the City has no

     "safe parking" lots or spaces where Plaintiffs or Class members can park without

1    potentially being charged under the OSV Overnight Ordinance, 72-hour limits, Gross

2    Vehicle Weight Restrictions, and the Human Habitation Ban.

3    21. Defendant City has rejected all attempts to establish "safe parking" lots, making it

4    clear that it seeks to banish Plaintiffs and Class Members from the City by (1) issuing

5    repeating parking citations so as to make it economically impossible for such persons

6    to live in their vehicle homes and (2) threatening Plaintiffs with loss of liberty

7    through imprisonment.

8    22. Additionally, the City's 311 anonymous reporting system, which is provided by the

9    Neighborhood Services Code Enforcement Unit (NSCEU) allows for the "housed"

10   residents to endlessly harass vehicle residents, especially mentally ill individuals with

11   no legal recourse. Thereby increasing their fines further destabilizing their housing

     and financial situation, and destabilizing their mental health.

12   23. Accordingly, the City's acts as alleged herein violate the Eighth Amendment's ban on

13   cruel and unusual punishment.

14

15   **SIXTH CLAIM FOR RELIEF: Excessive Fines and Fees (Eighth and Fourteenth**

16   **Amendment of the U.S. Constitution)**

17   24. Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though

18   fully set forth herein.

19   25. The 8th Amendment Excessive Fines Clause limits the government's power to extract

20   payments, whether in cash or in kind, "as punishment for some offense." Austin v.

21   United States, 509 U.S. 602, 609–10 (1993). A fine is excessive if it is grossly

22   disproportionate to the gravity of the offense, will deprive the offender of their

23   livelihood or is more than their circumstances and estate will bear. See Timbs v.

24   Indiana, 139 S. Ct. 682 (2019). Imposing unpayable fines on indigent defendants also

25   violates due process and equal protections of the laws under the due process and

26   equal protections provisions of Fourteenth Amendment, and the California

27   Constitution. Bearden v. Georgia, 461 U.S. 660, 667–68 (1983); People vs. Duenas,

28   30 Cal. App. 5th 1157, 1168 (2019).

     26. The City, by the acts alleged herein, has violated the 8th Amendment Excessive Fines

Clause by establishing a regime under which fines for a single continuous act—that of residing in an RV on city streets—gives rise to a series of rapidly cascading and ever-increasing fines and penalties. The punishments inflicted by the City on named Plaintiffs and Class members for violation of the OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban are excessive fines. Plaintiffs and Class members who attempt to pay these fines must sacrifice paying for life-sustaining food, medication, or other necessities. And because they cannot afford the fines, they risk losing the only home available to them—their vehicle home—through towing and impoundment. With their vehicle homes taken from them, Plaintiffs and Class members would face the dangers of living on the streets without shelter and/or without the other necessities of life provided by their vehicles. Such a cruel punishment is grossly disproportionate to the gravity of the offense—which is merely being human in Berkeley and being able to afford an RV or vehicle while being unable to afford the escalating cost of permanent housing.

27. As a result of enforcement of the OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban, the named Plaintiffs have unfairly received tickets they cannot afford to pay and have suffered mental distress, humiliation, fear and physical injury and/or illness. Plaintiffs and Class members are therefore entitled to injunctive and declaratory relief, restitution, and counsel fees and costs.

## SEVENTH CLAIM FOR RELIEF: Excessive Fines and Fees (Article I, § 17 of the California Constitution)

28. Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

29. Under Article I, § 17 of the California Constitution, "Cruel or unusual punishment may not be inflicted or excessive fines imposed."

30. For the reasons set forth above with respect to the Eighth Amendment of the U.S. Constitution, the OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight

1    Restrictions, and the Human Habitation Ban also violates Plaintiffs' rights under

2    Article I, § 17 of the California Constitution.

3

4    **EIGHTH CLAIM FOR RELIEF: State-Created Danger (Fourteenth Amendment of**

          **the U.S. Constitution)**

5

6    31. Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though

7        fully set forth herein.

8    32. The OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions,

9        and the Human Habitation Ban gives the City the power to boot and/or tow

         individuals' vehicles.

10

11   33. For vehicularly housed individuals like Plaintiffs, towing their vehicles constructively

12       evicts them from their homes, as they are unable to pay the fees to secure the release

13       of their vehicles in the event of a tow. This deprives these individuals of their only

         shelter and effectively forces them onto the street.

14

15   34. The City is aware of the fact that there is a housing crisis in Berkeley and that towing

16       vehicularly housed individual's homes will likely result in them living on the street.

17       During the COVID-19 pandemic, the risks posed to individuals whose homes are

18       towed are even greater. Individuals whose homes are towed are exposed to an

19       increased risk of contracting the COVID-19 virus because they are unable to shelter-

         in-place in their homes.

20

21   35. Even if these individuals are able to secure shelter elsewhere, for example in a shelter

22       for the unhoused, their risk of contracting the virus is still heightened because they

23       are in communal living quarters where they cannot social distance as effectively.

24       Towing individuals' vehicles during the COVID-19 pandemic affirmatively places

25       individuals in a state-created danger, in violation of the Fourteenth Amendment.

26       Individuals whose vehicles are towed are placed at a serious risk of harm because

         they are deprived of their shelter and unable to shelter-in-place and social distance

         from others.

27   36. The City is aware of the risks it exposes individuals to when it deprives them of their

28       only shelter during a pandemic. The COVID-19 pandemic has gripped the nation for

COMPLAINT
PAGE 20 OF 31 [JDC Template - 05/17]

a year, and the risks posed by the virus have been well publicized by federal and local governments and the CDC. For large portions of the time the City has been enforcing parking regulations on vehicle homes, while the entire state of California has been under a mandatory, statewide shelter-in-place order.

37. The City is aware of the rapidly changing global climate and the associated exposure deaths related to that change. Towing individuals' vehicles puts them at great risk of exposure to the extreme weather events, which are now a regular part of San Francisco Bay Area life. Violent crime against unhoused residents is common. Towing individuals' vehicle homes makes them more vulnerable to violence, theft, physical, mental and sexual assaults. As mental illness and severe mental illness are prominent among unhoused residents, losing a vehicle home, security and stability that come with that home, will lead to deteriorating mental health as well.

38. The City has acted with deliberate indifference to the danger in which it places Plaintiffs and has failed to take any steps, obvious or otherwise, to address these risks. The City has not taken COVID-19 into account in its enforcement of parking regulations, and continued enforcing on vehicle homes throughout the pandemic, and during severe weather events.

## NINTH CLAIM FOR RELIEF: Unlawful Seizure of Property by Towing
## (Fourth Amendment of the U.S. Constitution)

39. Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

40. Under the Fourth Amendment to the U.S. Constitution, all persons are entitled to be free from unreasonable seizures of their property. The towing or impoundment of a vehicle constitutes a "seizure" under well-established Fourth Amendment jurisprudence.

41. California Vehicle Code § 22650 acknowledges that "[a]ny removal of a vehicle is a seizure under the Fourth Amendment of the Constitution of the United States" and "shall be reasonable and subject to the limits set forth in Fourth Amendment jurisprudence."

42. Mere violation of a city ordinance is not sufficient to justify impoundment of a vehicle under the Fourth Amendment or California Vehicle Code § 22650. In order for the towing or impoundment of a vehicle to be permissible, the person whose vehicle is towed must be provided with individualized notice unless the towing entity has a "strong justification" for not providing notice.

43. The Berkeley Municipal Code 14.40.120, which established the OSV Overnight Ban does not provide for individualized notice, stating only violators are subject to fines and/or towing.

44. Defendant City does not have the required "strong justification" for towing Plaintiffs' vehicle homes.

45. No community caretaking need justifies towing the vehicles Defendant City claims are violating the OSV Overnight Ban, 72-hour limits, and Gross Vehicle Weight Restrictions. Accordingly, the acts of Defendant City, as alleged herein, violate the Fourth Amendment.

**TENTH CLAIM FOR RELIEF: Unlawful Seizure of Property by Towing (Article I, § 13 of the California Constitution)**

46. Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

47. Under Article I, § 13 of the California Constitution, all persons have the right "to be secure in their persons, houses, papers and effects against unreasonable searches and seizures.

48. For the reasons set forth above with respect to the Fourth Amendment of the U.S. Constitution, the OSV Ordinance violates Plaintiffs' rights under Article I, § 13 of the California Constitution.

**ELEVENTH CLAIM FOR RELIEF:Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, Banyash and Members of the Subclass Violation of Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12132, et seq.)**

49. Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, Banyash ("Plaintiffs with

*COMPLAINT*
*PAGE 22 OF 31 [JDC Template - 05/17]*

disabilities") incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

50. Defendant City is a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131.

51. Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, Banyash and members of the Subclass are "qualified persons with disabilities" as defined in the ADA. 42 U.S.C. § 12102; 42 U.S.C. § 12131; 28 C.F.R. § 35.104.

52. Title II of the Americans with Disabilities Act provides in pertinent part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

53. This prohibition against discrimination in "services, programs, or activities" applies to "anything a public entity does." Cohen v. City of Culver City, 754 F.3d 690, 695 (9th Cir. 2014) (citation omitted); see also Barden v. City of Sacramento, 292 F.3d 1073, 1076-77 (9th Cir. 2002) (discussing rationale for broad construction).

54. The City's parking program, including the enforcement by the Berkeley Police Department of its OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, is a service, program, or activity of the City.

55. Title II protects people with disabilities against facially neutral policies that burden people with disabilities more than non-disabled people, by requiring the public entity provide reasonable modifications to avoid the discrimination unless the public entity can demonstrate such modifications would result in a fundamental alteration of the program. 28 C.F.R. § 35.130(b)(7); Crowder v. Kitagawa, 81 F.3d 1480, 1485 (9th Cir. 1996).

56. Reasonable modifications can adjust for the financial limitations that arise from a disability, not just the immediate manifestations of the impairment giving rise to the disability. Giebeler v. M & B Associates, 343 F. 3d 1143, 1152 (9th Cir. 2003).

57. By refusing to reasonably modify its policies and practices as described herein to allow Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, Banyash and members of the

disability Subclass to legally park their vehicles on City streets or other public property and to utilize their vehicles for shelter, Defendant has violated and continues to violate the antidiscrimination requirements of Title II of the ADA.

58. Title II regulations interpreting the ADA prohibit a public entity from utilizing criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination based on disability. 29 C.F.R. § 35.130(b)(3).

59. A public entity is also prohibited from imposing eligibility criteria that screen out or tend to screen out individuals with disabilities from fully and equally enjoying any service, program, or activity. 28 C.F.R. § 35.130(b)(8).

60. Defendant's policies and practices in administering their OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban through ticketing Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, Banyash and members of the Subclass, which threatens them with arrest and impoundment of their vehicles has the effect of discriminating against and imposing disproportionate burdens on people with disabilities based on their disability, screening out such persons from the benefit of the City's parking program, and denying them meaningful access to such benefits and to the City's amenities enjoyed by and available to people without disabilities.

61. In carrying out Defendant's policies and practices as described herein, Defendant has utilized criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination based on disability. 29 C.F.R. § 35.130(b)(3). Plaintiffs have suffered and will continue to suffer injuries for which they have no adequate remedy at law.

62. Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate.

63. Pursuant to 42 U.S.C. § 12133, Plaintiffs with disabilities are entitled to declaratory and injunctive relief, and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

1

2

3

**TWELFTH CLAIM FOR RELIEF: Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, Banyash and Members of the Subclass Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 749)**

4

5

6

64. Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, Banyash ("Plaintiffs with disabilities") incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

7

8

9

10

11

12

13

65. The Defendant City of Berkeley and the City's Police Department are recipients of financial assistance from the federal government. Section 504 of the Rehabilitation Act of 1973 requires qualified persons with disabilities to be provided with meaningful access to federally funded programs. In order to assure meaningful access, reasonable modifications may be required unless the recipient of federal funding can demonstrate such modifications would result in a fundamental alteration in the nature of the program. 29 U.S.C. § 749; 24 C.F.R. §§ 8.3 and 8.4; Alexander v. Choate, 469 U.S. 287, 301 (1985).

14

15

16

17

18

19

20

66. Defendant's actions and omissions as herein stated have denied the rights of Plaintiffs with disabilities and Disability Subclass members, thereby denying them meaningful access to Defendant's parking program and to the amenities the City offers its residents without disabilities, and subjecting them to discrimination on the basis of disability, in violation of section 504 of the Rehabilitation Act. As a result of Defendant's unlawful acts in violation of the Rehabilitation Act, named Plaintiffs have suffered and continue to suffer injuries.

21

22

23

**THIRTEENTH CLAIM FOR RELIEF: Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, Banyash and Members of the Subclass Violation of the California Disabled Persons Act (California Civil Code §§ 54–54.3)**

24

25

26

67. Plaintiffs Dominguez, Zajac, MaxiLove, Galtney, Banyash ("Plaintiffs with disabilities") incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

27

28

68. The California Disabled Persons Act ("CDPA") incorporates the Americans with Disabilities Act, and states "a violation of the right of an individual under the

1  Americans with Disabilities Act…constitutes a violation of" the CDPA. Cal. Civ.

2  Code § 54.1(d).

3  69. Thus, by violating the ADA as alleged in Plaintiffs' First Cause of Action, above, the

4  City of Berkeley is also violating the CDPA.

5  70. Plaintiffs are aggrieved and potentially aggrieved by Defendant's acts and omissions,

6  as alleged herein. Moreover, as a direct and proximate result of those acts and

7  omissions, Plaintiffs have suffered and will continue to suffer injuries for which they

8  have no adequate remedy at law.

9  71. Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive

   relief is appropriate.

10  72. Under the CDPA, Plaintiffs with disabilities are entitled to damages including the

11  greater of actual or statutory damages. Cal. Civ. Code § 54.3(a).

12  73. Plaintiffs with disabilities are also entitled to an award of counsel fees, costs, and

13  expenses. Id.

14

15  **FOURTEENTH CLAIM FOR RELIEF: Plaintiffs Dominguez, Zajac, MaxiLove,**

16  **Galtney, Banyash and Members of the Subclass Discriminatory Program (Cal. Gov't**

17  **Code §11135)**

18  74. Each and every allegation throughout this entire complaint is incorporated as though

19  repeated and fully set forth herein.

20  75. California Government Code section 11135 sets forth a nondiscrimination policy for

21  state programs. It provides that in pertinent part:

22  "[n]o person in the State of California shall, on the basis of race, national origin, ethnic

23  group identification, religion, age, sex, sexual orientation, color, genetic information or

    disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully

24  subjected to discrimination under, any program or activity that is conducted, operated, or

25  administered by the state or by any state agency, is funded directly by the state, or receives

26  any financial assistance from the state."

27  Cal. Gov't Code § 11135(a).

28  76. Defendant City of Berkeley and the City's Police Department are recipients of

financial assistance from the State of California.

77. It is a discriminatory practice for a recipient of state financial assistance, in carrying out any program or activity, on the basis of disability, (a) to deny a person the opportunity to participate in, or benefit from an aid, benefit or service; (b) to afford a person the opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded others; (c) to provide a person with an aid, benefit or service that is not as effective in affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others…(g) to otherwise limit a person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by others receiving any aid, benefit or service resulting from the program or activity." 22 Cal. Code Regs. § 98101 (a)-(c), (g).

78. It is also discrimination for a recipient of state financial assistance to utilize criteria or methods of administration that: "(1) have the purpose or effect of subjecting a person to discrimination on the basis of disability; [or] (2) have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program with respect to a person with a disability…" 22 Cal. Code Regs. § 98101(i).

79. Defendant City was, at all times relevant to this action, and is currently operating or administering a program or activity that receives state financial assistance, within the meaning of Section 11135.

80. Defendant City has violated the rights of Plaintiffs with disabilities secured by Cal. Gov't Code § 11135 et seq.

81. Because Defendant's discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendant's actions, Plaintiffs with disabilities are suffering irreparable harm and therefore speedy and immediate relief is appropriate.

82. Plaintiffs with disabilities are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

1

## DEMAND FOR RELIEF

2

*[State what you want the Court to do. Depending on your claims, you may ask the Court to award you money or order the defendant to do something or stop doing something. If you are asking for money, you can say how much you are asking for and why you should get that amount, or describe the different kinds of harm caused by the defendant.]*

3

4

____. (PLEASE SEE ATTACHED DOCUMENT)

5

6

7

8

9

10

11

12

13

14

15

## DEMAND FOR JURY TRIAL

16

*[Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.]*

17

☑ Plaintiff demands a jury trial on all issues.

18

19

20

Respectfully submitted,

21

22

Date:  11/01/21        Sign Name: ④

23

Print Name ① Melissa Cheatwood, ② Lucien Jeffords

24

③ Clarence Galtney  ④ Rebecca Fisher

25

⑤ Merced Dominguez  ⑥ Melissa Zajac

26

⑦ Pamala Benfante  ⑧ Deborah Maxilove

27

⑨ Ronald Banyash  ⑩ Richard Doran

28

COMPLAINT
PAGE 28 OF 31  *[JDC TEMPLATE – 05/17]*

**PRAYER FOR RELIEF**

Based on the foregoing, Plaintiffs respectfully request the following relief:

1) Cease all Berkeley Parking Enforcement against Vehicle Homes, and grant an opportunity for vehicle residents to contest the City's actions. The Court issue a declaration that the City's scheme for towing Vehicle Homes violates the California and United States Constitution, and issue a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction, and writ of mandate.

2) Declare Berkeley's OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban , violate the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution; Article I, §§ 7(a), 13, and 24 of the California Constitution; Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 749; the California Disabled Persons Act, California Civil Code §§ 54-54.3; and California Government Code section 11135.

3) Certify the proposed Class and Disability Subclass as indicated above, and appoint the named Plaintiffs as class representatives and the undersigned counsel as class counsel;

4) In the alternative, issue an order requiring the City of Berkeley to create a process for vehicle residents with disabilities to seek exemption from enforcement of OSV Overnight Ordinance, 72-hour limits, Gross Vehicle Weight Restrictions, and the Human Habitation Ban on the basis of their physical and/or mental disabilities, and to provide accessible and adequate safe parking sites.

5) Declare the Berkeley Municipal Code 12.76.010 - the Human Habitation Ban, BMC 14.40.120 - the OSV Overnight Ban, and BMC 14.56.070 - Gross Vehicle Weight Restriction, are void for vagueness and unenforceable under the Fourteenth Amendment of the U.S. Constitution;

6) City of Berkeley to designate areas and a map of streets where vehicle residents are not

subject to violation of vehicle ordinances, until such time that permanent accessible housing that is affordable is made available to these individuals and/or the creation of inclusive Safe Parking programs.

7) An amendment to the California Vehicle Code to include Vehicle Codes exclusive for Vehicles Homes to maintain the health and safety of all stakeholders in the City of Berkeley.

8) ADA accommodations for off-street parking and Safe Parking Lots. Include mental health and physical disability accommodations.

9) ADA compliance and Civil Rights training, especially protected classes, for all Defendants.

10) Designate a reasonable living space size for unhoused residents. The Court issue a declaration that the City's scheme for clearing the sidewalks under BMC 14.48.020 ( "The 3'x3' Sidewalk Ordinance") violates the California and United States Constitution, and issue a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction, and writ of mandate.

11) Amend Section 12.76 to permit the use of campers and house cars as mobile, temporary dwellings when parked in the rear of a single-family,  multifamily residential building or driveway (as practiced in other Cities). Remove the clause prohibiting human habitation for more than three consecutive nights within 90 days to allow habitation in campers and house cars.

12) Amend Section 23D.08.005 to clarify that dependent, no-rent habitation accessory buildings for the purpose of bridge housing are allowed as an accessory use to existing residential use. Expand the definition of "accessory building" to include shelters on commercial and religious use lots. For properties owned by faith-based organizations, allow by-right development of up to one unit for every 5000 square feet with additional units permitted through the existing administrative Use Permit (AUP) process.

1    13) Amend the City's 311 service and policies, working under the Neighborhood Services

2    Code Enforcement Unit, to prohibit completely anonymous reports, and eliminate targeted,

3    repetitive harassment of unhoused residents, especially the disabled.

4    14) Award restitution for fines and penalties that Defendant, the City has collected from

5    named Plaintiffs and Class members pursuant to the OSV Overnight Ordinance, 72-hour limits,

6

7    Gross Vehicle Weight Restrictions, and the Human Habitation Ban.

8    15) Award to Plaintiffs' costs and expenses incurred in the filing and prosecution of this

9    action, as authorized by 42 U.S.C. § 12188 and California Civil Code section 54.3;

10    16) Order such other and further relief that the Court deems just and proper.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28